MATTER OF WONG

In Visa Petition Proceedings

A-13862538-9-40-41

*Decided by Board January 3, 1967*

Since a Chinese mutual consent divorce is not valid to terminate a marriage celebrated in accordance with the Hong Kong Marriage Ordinance (which marriage is terminable only in accordance with the Hong Kong Divorce Ordinance), the 1958 agreement of divorce written by petitioner's second wife is ineffective to terminate their 1955 registry marriage in Hong Kong in accordance with the Hong Kong Marriage Ordinance; therefore, petitioner's subsequent registry marriage to the principal beneficiary at Hong Kong in 1964 in accordance with the Hong Kong Marriage Ordinance is not valid for immigration purposes, and revocation of the petition according beneficiaries immediate relative status on the basis thereof is approved. [*Matter of Chang*, Int. Dec. No. 1655, reaffirmed.]

ON BEHALF OF PETITIONER:
  Jackson Cook, Esquire
  4 East 41st Street
  New York, New York  10017
  (Brief filed)

ON BEHALF OF SERVICE:
  Irving A. Appleman
  Appellate Trial Attorney

The cases come forward pursuant to certification of the order of the District Director, New York District, dated September 1, 1966 ordering that his original decision dated September 9, 1965 revoking the approval of the visa petitions be reaffirmed for the reasons set forth in an attached order.

The petitioner, a native of Kwangtung, China, a citizen of the United States by naturalization on July 2, 1951, 63 years old, filed a visa petition on May 22, 1964 seeking nonquota status on behalf of the beneficiaries as his wife and children. The petitioner married the wife by Chinese custom on September 15, 1958 and again on February 29, 1964 at Hong Kong, B.C.C., by a registry marriage. The minor beneficiaries are a son, born September 4, 1959, and two daughters, born May 5, 1961 and December 2, 1962, respectively.

According to the testimony of the petitioner, he first entered the United States in November 1942 as a seaman and was naturalized

July 2, 1951. He was first married to Au Shee about 32 years ago in China and that marriage was terminated by her death sometime during the last World War. He next married Kwok Tung Ngor on September 19, 1955 at the Registrar's Office in Victoria, Hong Kong in accordance with the Hong Kong Marriage Ordinance. This registry marriage was allegedly terminated in 1958 by an agreement of divorce written by the wife on the back of the marriage certificate. The parties were married by a registry marriage pursuant to the Hong Kong Marriage Ordinance, section 22, on February 29, 1964 and this marriage certificate bears a notation that the same parties previously were married to each other according to Chinese customary rights and ceremonies on September 15, 1958 in Hong Kong. Counsel argued that it was immaterial how persons were married, whether by a civil ceremony or by a Chinese custom marriage, inasmuch as it has already been established that in Hong Kong custom divorces by written agreement between the parties were recognized as valid. The Service assumed that when the Registrar at Hong Kong issued the marriage certificate, he recognized the validity of the divorce, and on May 29, 1964 the visa petition was approved for nonquota status.

The American Consul at Hong Kong referred the matter of the dissolution of the second marriage of the petitioner to the Registrar of Marriages at Hong Kong who on May 12, 1965 stated that any marriage contracted between persons of any nationality under the Hong Kong Marriage Ordinance could only be dissolved by a decree of a competent court and that no divorce agreement made between the parties concerned could be accepted as a legal divorce document for such a marriage and therefore the beneficiary was not the legal wife of the petitioner. The matter was referred back to the Service which on December 9, 1965 revoked the prior approval of the visa petition.

On appeal, this Board by order dater October 27, 1965, after reciting the above facts, adverted to a brief submitted by counsel challenging the authority of the Registrar of Marriages at Hong Kong to render an opinion as to the validity of the written divorce agreement. Counsel also claimed that the Hong Kong Marriage Ordinance does not specify how a marriage under that ordinance may be dissolved and contended that the divorce agreement effectively terminated the Hong Kong civil marriage. We remanded the case for consideration of the brief filed by counsel and for the purpose of ascertaining the authority of the Registrar of Marriages in Hong Kong to pass upon the validity of the Chinese custom divorce, with directions to transmit the brief of counsel to the American Consul in Hong Kong for forwarding to the Registrar of Marriages in order to resolve the questions raised therein.

The order of the District Director dated September 1, 1966 sets forth a summary of the above matters and of the information developed upon the remand. Under date of December 8, 1965 the British Attorney General at Hong Kong advised the Service that it is not within the powers nor part of the duty of the Registrar of Marriages to make a judicial finding on the validity of a divorce; that the Registrar of Marriages was replying to a request for information and his response should be regarded merely as an attempt to assist rather than as an authoritative pronouncement; that he is not authorized, nor is he competent from the British Government's point of view, to deliver an opinion on the facts outlined.

The District Director then goes on to summarize the matters bearing on the case: (1) Regarding the purported customary dissolution agreement written by the wife "in her own handwriting in Chinese characters on the reverse side of the original Marriage Certificate," and accepting counsel's argument that the Chinese law applicable in Hong Kong is the Tsing Code of China as it existed in 1843 when Hong Kong was ceded to England, although the Tsing Law does not require the signature of two witnesses, yet the divorce document (called Hsiu-shu) or letter of divorce must be written in the handwriting of the husband, signed by him alone and then delivered to the wife; divorce under Tsing Law is a unilateral right belonging exclusively to the husband and must be exercised by him alone and not in conjunction with the wife who has no say in the matter; under the laws of the Tsing Dynasty, divorce is a unilateral right belonging exclusively to the husband. Authority for this statement is an opinion dated November 9, 1958 by Dr. Vernier Y. Chiu, Barrister at Law, Hong Kong, former Chief Justice of the High and District Courts of China and eight years Professor of Chinese Law at National Kwangsi University; also "Chinese Law and Custom in Hong Kong", the report of the Governor's Committee printed and published by the Government Printer, Hong Kong, Appendix 9, Page 203.

(2) The second marriage of the petitioner occurred on September 19, 1955 and was celebrated at the Marriage Registry in accordance with the "Marriage Ordinance (Chapter 181) Ordinances of Hong Kong." A marriage celebrated before the Hong Kong Registrar of Marriages in accordance with the Marriage Ordinance is a "Christian" marriage or the civil equivalent of a "Christian" marriage (section 41, Marriage Ordinance). A declaration required of all persons celebrating marriages before the Registrar of Marriages sets forth the understanding that the marriage cannot be dissolved except by a valid judgment of divorce.

(3) Chapter 25 of the Strickland-Ridehaigh-McDouall Report

31

states in part that parties married under the Marriage Ordinance could not be divorced except in accordance with the Divorce Ordinance.

(4) An examination of the Divorce Ordinance, Chapter 179, indicates that a registry marriage may only be terminated by a formal divorce under the Divorce Ordinance. The Divorce Ordinance provides for the dissolution of marriage where that marriage was either a Christian marriage or the civil equivalent (section 4(1)(a)), and where the domicile of the parties to the marriage was in the Colony (section 4(1)(b)).

(5) This paragraph quotes Page 118 of the Strickland Report to the effect that while *prima facie* Chinese customary divorce applies to Chinese customary marriage, clearly English law would not permit Chinese customs to apply to Christian marriages or the civil equivalent of Christian marriage even where the parties are Chinese domiciled in Hong Kong; that the Hammersmith Registry case is authority for the proposition that a monogamous form of marriage cannot be dissolved in a method appropriate only to a polygamous form. The points and authorities referred to in the District Director's order are contained in a letter of transmittal from the Officer in Charge at Hong Kong dated May 2, 1966 which contains much additional material which is not repeated in the interest of brevity.

Counsel for the petitioner has submitted a brief in which he replies ad seriatim to the points raised in the order of the District Director. As to point (1), counsel cites the penal provisions of the Tsing Law concluding with the statement that a man or wife who can no longer live together in harmony and who are willing to divorce may, however, do so without receiving punishment. This is part of the penal provision and does not constitute a refutation of Dr. Chiu's opinion that the divorce document (Hsiu-Shu) must be in the handwriting of the husband, signed by him alone and then delivered to the wife. It is noted that the alleged divorce which was written on the back of the registry's marriage certificate is stated to be in the first wife's handwriting. Counsel refers to an article entitled "The Divorce Law of China" by Robert T. Bryan, Jr. printed in the American Bar Association Journal of 1920 (Ex. II) which refers to the provisions of the Chinese Provisional Civil Code enacted in 1913. The article does not set forth the provisions for the interpretation of the Tsing Law which is urged to be applicable in Hong Kong. The case of *Lee* v. *Lau*, 2 All England Reports 248, involves a ceremonial Chinese custom marriage in Hong Kong and not a registry marriage and the holding in that case does not appear to be applicable.

As to point (2), counsel contends that the declaration required of all persons celebrating marriage before the Registrar of Marriages de-

clare that it is their understanding that the marriage cannot be dissolved except by a valid judgment of divorce. Counsel contends that this provision is merely a warning or admonition and that the marriage here was dissolved by a valid divorce. He cites the case of *The Attorney General* v. *Reid*, Privy Council Appeal No. 18 of 1964, which involved a prosecution for bigamy arising subsequent to a marriage in 1933 under the Marriage Registration Ordinance of Ceylon, subsequently the husband and a divorced woman being converted to the Muslim faith who were later married under the provisions of the Muslim Marriage and Divorce Act notwithstanding the earlier marriage was subsisting and had not been dissolved. The burden of proof in a criminal proceeding and in a civil proceeding such as a visa petition are so disparate as to make this case a doubtful precedent when applied to the facts of the instant case.

As to point (3), counsel attacks the Strickland-Ridehaigh-McDouall Report as merely a report of what the committee found to exist in Hong Kong with respect to marriage, divorce, adoption and concubinage and contains certain recommendations as to what the Government should do. He asserts that none of the recommendations contained in the report were adopted by the legislature or government of Hong Kong and that the report has no legal binding effect. Nevertheless, it is an official government report and recommendation as to matters found to exist in Hong Kong, and is entitled to consideration.

Counsel disputes the accuracy of point (4) which cites sections 4(1)(a) and (b) of the Divorce Ordinance of Hong Kong. These sections provide:

4. (1) Nothing herein shall authorize the court to make any decree of dissolution of marriage except—

(a) where the marriage was either a Christian marriage or the civil equivalent of a Christian marriage; and

(b) where the domicile of the parties to the marriage at the time when the petition was presented in the Colony.

Section 4(1)(a) would appear to cover the instant case where there was a Christian marriage or the civil equivalent of a Christian marriage which must be dissolved by a decree of dissolution of marriage. It is recognized that the domicile of the husband-petitioner in this case presents a jurisdictional problem as to the Hong Kong divorce which is a divorce by agreement, inasmuch as the petitioner was then a citizen of the United States and a resident and domiciliary of New York. It may be that the petitioner could not obtain a court divorce in Hong Kong. It is even more difficult to perceive how this petitioner, a United States citizen, and a resident and domiciliary of the United States, could obtain a Chinese custom divorce in Hong Kong.

Counsel finally refers to point (5) of the District Director's order quoting from the Strickland Report that clearly English law would not permit them (Chinese customary marriages and divorces) to apply to Christian marriages or the civil equivalent of Christian marriages even where the parties are Chinese domiciled in Hong Kong; that the Hammersmith Registry case is authority for the proposition that a monogamous form of marriage cannot be dissolved in a method appropriate only to a polygamous form. Counsel's argument that no English law is being applied but Chinese law, begs the question, inasmuch as the marriage in this case was admittedly a Christian one or its equivalent, whereas the divorce was a Chinese customary divorce.

In a visa petition proceeding the petitioner has the burden of establishing that he is entitled to immediate relative or preference status by virtue of any of the relationships described in paragraph (1), (4) or (5) of section 203(a) or section 201(b) of the Immigration and Nationality Act, as amended. Section 204 of the Immigration and Nationality Act; 8 CFR 204.2(d). The petitioner in this case, a naturalized citizen of the United States since 1951, and a resident and domiciliary of the State of New York, filed a visa petition on May 22, 1964 which was approved on December 5, 1964. The visa petition was returned by the American Consul at Hong Kong because of information that the petitioner's prior marriage had not been validly terminated. The case was remanded for further evidence. The additional evidence is set forth in an order accompanying the notice of certification dated September 1, 1966 reaffirming the original decision dated September 9, 1965 revoking the approval of the visa petition. Admittedly, there are involved complex questions involving the termination of the prior marriage of the petitioner including the domicile of the United States citizen petitioner, which have been set forth at length in our decision. In a somewhat similar case, *Matter of Chang*, Int. Dec. No. 1655, based upon information from the Library of Congress, we held that a Chinese mutual consent divorce was not valid to terminate the Hong Kong ceremonial or registry marriage. The decision of the District Director confirms the conclusion reached in that case.

After due and careful consideration, bearing in mind that the burden rests upon the petitioner to establish the validity of his claim to immediate relative status on behalf of the beneficiaries, we are not persuaded that the order of the District Director is incorrect. The order of the District Director will be approved. Approval of the order of revocation will be without prejudice to a motion to reopen supported by a judgment of a New York court as to the validity of the existing

marital status. The legitimacy of the children of the petitioner should also be resolved in a motion to reopen.

**ORDER:** It is ordered that the order of the District Director, New York, dated September 1, 1966 reaffirming the order of revocation be and the same is hereby approved.